David L. Mortensen (USB No. 8242)
   Email: *dlmortensen@stoel.com*
Monica S. Call (USB No. 11361)
   Email: *mscall@stoel.com*
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Plaintiff
Su-Raj Diamonds & Jewelry USA, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| SU-RAJ DIAMONDS & JEWELRY USA, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>NOVATEK, INC., a Utah corporation,<br><br>Defendants. | **COMPLAINT**<br><br>Civil Action No. 2:13-cv-01047-CW<br><br>The Honorable Clark Waddoups |

    Plaintiff Su-Raj Diamonds & Jewelry USA, Inc. ("Su-Raj") hereby complains against Novatek, Inc. ("Novatek") and for its causes of action allege as follows:

### NATURE OF ACTION

    1.    This action arises from Novatek's refusal to comply with its contractual obligations. Specifically, on or about May 29, 2008, Su-Raj entered into an Equipment Purchase Agreement (the "Purchase Agreement") with Novatek. A copy of the Purchase Agreement is incorporated herein and attached hereto as Exhibit A. Pursuant to the terms of the Purchase

Agreement, Novatek agreed to sell a "a new generation Novatek HPHT Press System [including] Seller's proprietary six axis press, press stand, computerized electronic control system, hydraulic power pock and chiller," and all updates and technical improvements developed prior to delivery (the "System") for a purchase price of $2.9 million.  *See* Purchase Agreement at ¶ 1-2.  Additionally, in the Purchase Agreement, Su-Raj was given the option to purchase two more Systems for a purchase price of $4.85 million.  *See id.* at ¶ 4.

2.     In return, pursuant to the Purchase Agreement, Su-Raj made a downpayment of $100,000 in June 2008, and an additional payment of $1.4 million in August 2008.  Subsequently, in 2009, there was an agreement between Su-Raj and Novatek to delay the purchase of the initial System.  In July of 2011, Su-Raj and Novatek agreed to go forward with the sale of the initial System and Su-Raj informed Novatek that it wanted to purchase two more systems.  Around that time, Su-Raj made an additional payment of $1.4 million towards purchase of the first System.

3.     Novatek has not delivered the System as required by the Purchase Agreement.

4.     Instead, Novatek has repeatedly sought to change the terms of the parties' written agreement.  Among other things, even though the Purchase Agreement clearly anticipated and allowed Su-Raj to export the Systems it purchased to a foreign country, Novatek unilaterally refused to allow Su-Raj to do so.  Indeed, despite having accepted the purchase amount, Novatek subsequently refused to even sell the System to Su-Raj, instead demanding that Su-Raj enter into a long-term services contract with Novatek, whereby Su-Raj (and subsequently Su-Raj's subcontractor, Nozomi Technology, Inc, ("Nozomi")) would pay to use Novatek's systems and also pay for Novatek services on Novatek property.   Moreover, Novatek has refused to provide

(a) the maintenance training for Su-Raj and its subcontractor's employees; and (b) the training materials as required by the Purchase Agreement.

5. Novatek's actions constitute a material breach of the Purchase Agreement and have cause Su-Raj serious damages in an amount to be determined at trial, but not less than $2.9 million.

## PARTIES, JURISDICTION AND VENUE

6. Su-Raj is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 36 West 44th Street, Suite 1020, New York, New York 10036.

7. On information and belief, Novatek is a corporation organized and existing under the laws of the State of Utah, with its principal place of business at 2185 South Larsen Parkway, Provo, Utah 84606.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity between Su-Raj and Novatek and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. This Court has personal jurisdiction over Novatek because: (a) Novatek is incorporated in and maintains its principal place of business within the state of Utah; (b) Novatek has had continuous and systematic contacts with the state of Utah; and (c) Novatek has specific contacts with Utah sufficiently related to this cause of action to warrant the exercise of personal jurisdiction by this Court.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Novatek resides in Utah and a substantial part of the events giving rise to the claims occurred in this forum.

## FACTUAL BACKGROUND

### The Parties' Business Operations

11. During all relevant times, Su-Raj was a leading provider of wholesale diamonds.

12. On information and belief, Novatek, among other things, is in the business of designing, manufacturing and selling equipment useful in improving and affecting the color of diamonds.

### The Parties Execute the Equipment Purchase Agreement.

13. On or about May 29, 2008, Su-Raj and Novatek entered into the Purchase Agreement.

14. Pursuant to the terms of the Purchase Agreement, Su-Raj agreed to purchase and Novatek agreed to sell to Su-Raj the System, which was defined as including "a new generation Novatek HPHT Press System which will include Seller's proprietary six axis press, press stand, computerized electronic control system, hydraulic power pock and chiller." *See* Purchase Agreement at ¶ 1.

15. With the System, Novatek also agreed to provide (a) all updates and improvements to the System that were developed by Novatek prior to delivery of the System to Su-Raj; and (b) "manuals applicable to the System regarding installation, testing, operation and maintenance as [Novatek] has developed or will have developed within five years." *Id.*

16. To facilitate Su-Raj's use of the System, in the Purchase Agreement, Novatek agreed to provide training to Su-Raj on the operation and maintenance of the System for a period of five (5) years. *See id.* at ¶ 9.a. With respect to that training, the parties agreed that it would occur at Novatek's facilities in Utah, would be provided at a set price and that Su-Raj would be able to determine the amount of training in its discretion. *Id.*

17. In return for the System, Su-Raj agreed to pay Novatek $2.9 million. *Id.* at ¶ 2. Payment of the purchase price was to be made by Su-Raj paying a deposit of $1.5 million, with $100,000 paid on execution of the Purchase Agreement, $400,000 paid thirty (30) days after execution of the Purchase Agreement and $1 million within sixty (60) days after execution of the Agreement. *Id.* The remaining $1.4 million was to be paid when the System was operational and performing according to the specifications set forth in the Purchase Agreement. *See id.*

18. Importantly, both Novatek and Su-Raj understood that Su-Raj intended to transport the System to another country, to be determined by Su-Raj in its discretion. Indeed, the Purchase Agreement specifically anticipated that the System would be shipped to and installed in a facility in a country to be determined by Su-Raj. In fact, the Purchase Agreement provides that "'Foreign Operational Date' shall mean the first to occur of (i) 100 successful runs decolorizing diamonds in the country to which [Su-Raj] ships the System for installation or (ii) one week of successful decolorizing of diamonds in such country, but not to exceed 120 days after Operational Date." *Id.* at ¶ 2.

**Novatek Grants Su-Raj the Option to Purchase Two More Systems.**

19.     In the Purchase Agreement, Novatek also granted Su-Raj an option to purchase two more Systems, including all subsequent improvements and developments, for a purchase price of $4.8 million.  *Id.* at ¶ 5.

20.     Su-Raj was able to exercise the option for up to 30 days after the Foreign Operational Date, as defined in the Purchase Agreement.

**Novatek Agrees to Provide Services Pending Delivery of the System**

21.     Pending final delivery of the System, in the Purchase Agreement, Novatek agreed to provide certain services to Su-Raj and to allow Su-Raj to use certain Novatek equipment (including Novatek's facilities and related computer work stations) on specific terms set forth therein.

**Termination Provisions**

22.     The Purchase Agreement gave Su-Raj the right to terminate the Purchase Agreement if, among other things, the first System ordered is not operational within 18 months after the date of this Agreement.  *Id.* at ¶ 7.

23.     The parties specifically agreed that if Su-Raj terminated the Purchase Agreement, Novatek would "promptly return to [Su-Raj] any and all deposits" paid to Novatek.  *Id.*

**Su-Raj Pays the Deposit and Other Amounts Required to Purchase the System.**

24.     Pursuant to the terms of the Purchase Agreement, Su-Raj paid the $1.5 million deposit amount for purchase of the System.

25. Thereafter, based on Novatek's agreement to provide a newer, high pressure machine within a 4-6 month period, in or about July 2011, Su-Raj paid the remaining amount of the purchase price of $1.4 million to Novatek.

**Novatek Breaches the Purchase Agreement.**

26. While Su-Raj has paid the full amount of the purchase price, Novatek has failed to deliver the System as required by the Purchase Agreement.

27. Instead, Novatek has sought to unilaterally change the terms of the parties' written agreement. Specifically, although the Purchase Agreement allowed Su-Raj to export the purchased System to another country, Novatek refused to provide the System unless Su-Raj agreed to lease space from Novatek and keep the System at Novatek's facilities.

28. Additionally, Novatek refused to provide the maintenance training and operation manuals to Su-Raj as required by the express terms of the Purchase Agreement. Indeed, the individual nominated by Su-Raj to receive such training was forced to leave Novatek's premises after a few days and told not to return.

29. Thereafter, while ostensibly agreeing to provide the System, Novatek sought to extort a greater purchase price. Indeed, despite the fact that Su-Raj had already paid the purchase price and that the purchase price for the System included all improvements and upgrades to the System until it was delivered (*see* Purchase Agreement at ¶ 1), Novatek demanded that Su-Raj pay hundreds of thousands of dollars more for each of the Systems, including each of the two Systems Su-Raj had the option to purchase.

30. Beyond that, Novatek later sought to change even those terms demanding that, instead of purchasing a System, Su-Raj enter into a services contract with and pay Novatek to

provide systems, at the Novaek site, for the use of Su-Raj. However, even there, Novatek continued to change the amounts it charged, the terms on which it would provide services to Su-Raj and the terms on which it would allow Su-Raj to use the systems at Novatek's facilities.

**Su-Raj Seeks to Exercise its Option to Purchase the Two Additional Systems.**

31. In or about February 2012, representatives of Su-Raj met with representatives of Novatek and informed Novatek that it intended to exercise the option in the Purchase Agreement to purchase the additional two (2) Systems.

32. In response, however, Novatek refused to sell the additional Systems, again demanding that Su-Raj enter into a services contract with and pay Novatek to provide systems, at Novatek's site, for use by Su-Raj.

33. Thereafter, when Su-Raj refused to pay the exorbitant prices being charged by Novatek for its services and use of the systems, Novatek threatened to discontinue all services to Su-Raj. Novatek also threatened that it would no longer allow Su-Raj to use any of the systems at Novatek's facilities, even though Su-Raj had paid the entire purchase price for one of the systems.

34. Most recently, Novatek has refused to provide the Systems on the terms and conditions set forth in the Purchase Agreement, has refused to provide services or allow Su-Raj to use Novatek's facilities as required under the Purchase Agreement, has refused to provide the manuals to Su-Raj as required by the Purchase Agreement and has refused to provide training on maintenance of the Systems as required by the Purchase Agreement.

**Novatek's Actions have Caused Su-Raj Serious Damages.**

35. Novatek's actions as described herein constitute a material breach of the Purchase Agreement.

36. As a direct and proximate result of Novatek's breach of the Purchase Agreement, Su-Raj has suffered and continues to suffer damages in an amount to be proven at trial, but not less than $2.9 million.

37. In addition to recovering damages for Novatek's breach, the Purchase Agreement provides that because the System is unique, Su-Raj "may invoke any equitable remedy to enforce performance hereunder, including, without limitation, the remedy of specific performance." *See* Purchase Agreement at ¶ 13.a.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

38. Su-Raj hereby incorporates by reference the allegations set forth in paragraphs 1 through 37 above as though fully set forth herein.

39. As set forth above, on or about May 29, 2008, Novatek and Su-Raj entered into the Purchase Agreement.

40. The Purchase Agreement is a valid and binding agreement.

41. As set forth in greater detail above, in the Purchase Agreement, Novatek agreed to (a) sell the System, including all improvements and upgrades, to Su-Raj for a purchase price of $2.9 million; (b) provide maintenance training and training materials regarding operation and maintenance of the Systems to Su-Raj; (c) allow Su-Raj to purchase two additional Systems for a purchase price of $4.85 million; and (d) allow Su-Raj to use Novatek's equipment for a predetermined price.

42. As set forth in greater detail above, Novatek has breached the Purchase Agreement by, among other things, failing and/or refusing to (a) sell the System, including all improvements and upgrades, to Su-Raj for a purchase price of $2.9 million; (b) provide

maintenance training and training materials regarding operation and maintenance of the Systems to Su-Raj; (c) allow Su-Raj to purchase two additional Systems for a purchase price of $4.85 million; and (d) allow Su-Raj to use Novatek's equipment for a predetermined price.

43. Su-Raj has fully performed its obligations under the Purchase Agreement.

44. As a direct and proximate result of Novatek's breach of the Purchase Agreement, Su-Raj has suffered and continues to suffer damages in an exact amount to be proven at trial, but not less than $2.9 million.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

45. Su-Raj hereby incorporates by reference the allegations set forth in paragraphs 1 through 44 above as though fully set forth herein.

46. As set forth above, on or about May 29, 2008, Novatek and Su-Raj entered into the Purchase Agreement.

47. The Purchase Agreement is a valid and binding agreement.

48. Pursuant to applicable law, there is a covenant of good faith and fair dealing implied in the Purchase Agreement, whereby Novatek pledged that it would not do anything that would have the effect of destroying or injuring Su-Raj's right to receive the benefits of the Purchase Agreement.

49. As set forth in greater detail above, Novatek has breached the implied covenant of good faith and fair dealing in the Purchase Agreement by, among other things, failing and/or refusing to (a) sell the System, including all improvements and upgrades, to Su-Raj for a purchase price of $2.9 million; (b) provide maintenance training and training materials regarding operation and maintenance of the Systems to Su-Raj; (c) allow Su-Raj to purchase two additional Systems

for a purchase price of $4.85 million; and (d) allow Su-Raj to use Novatek's equipment for a predetermined price.

50. Su-Raj has fully performed its obligations under the Purchase Agreement.

51. As a direct and proximate result of Novatek's breach of the implied covenant of good faith and fair dealing in the Purchase Agreement, Su-Raj has suffered and continues to suffer damages in an exact amount to be proven at trial, but not less than $2.9 million.

### THIRD CAUSE OF ACTION
### Unjust Enrichment

52. Su-Raj hereby incorporates by reference the allegations set forth in paragraphs 1 through 51 above as though fully set forth herein.

53. As set forth above, based on Novatek's agreement to perform its obligations under the Purchase Agreement, Su-Raj agreed to pay Novatek $2.9 million and agreed to perform its other obligations under the Purchase Agreement.

54. Novatek received the $2.9 million purchase price and other amounts paid by Su-Raj and benefitted from receiving those amounts.

55. It would be inequitable for Novatek to retain the amounts paid because Novatek has failed and/or refused to (a) sell the System, including all improvements and upgrades, to Su-Raj for a purchase price of $2.9 million; (b) provide maintenance training and training materials regarding operation and maintenance of the Systems to Su-Raj; (c) allow Su-Raj to purchase two additional Systems for a purchase price of $4.85 million; and (d) allow Su-Raj to use Novatek's equipment for a predetermined price.

56.     As a result, Novatek has been unjustly enriched and Su-Raj has suffered and continues to suffer damages in an exact amount to be proven at trial, but not less than $2.9 million.

## PRAYER FOR RELIEF

WHEREFORE, Su-Raj respectfully prays that this Court enter judgment against the Novatek as follows:

A.   On the First Cause of Action:

   1.   For general compensatory and consequential damages in an amount to be proven at trial but not less than $2.9 million; and

   2.   For pre and post-judgment interest as allowed by applicable law.

B.   On the Second Cause of Action:

   1.   For general compensatory and consequential damages in an amount to be proven at trial but not less than $2.9 million; and

   2.   For pre and post-judgment interest as allowed by applicable law.

C.   On the Third Cause of Action:

   1.   For general compensatory and consequential damages in an amount to be proven at trial but not less than $2.9 million; and

   2.   For pre and post-judgment interest as allowed by applicable law.

D.   On All Causes of Action:

   1.   For costs and attorneys' fees to the fullest extent allowed by law; and

   2.   For such other and further relief as the relief as the Court deems just and proper.

Dated:  November 25, 2013

STOEL RIVES LLP


/s/ *David L. Mortensen*
David L. Mortensen
Monica S. Call

Attorneys for Plaintiff
Su-Raj Diamonds & Jewelry USA, Inc.


Plaintiff's Address
36 West 44th Street, Suite 806
New York, New York 10036